27 C.C.P.A. (Patents)

### SALER v. HALLOCK.
### Patent Appeal No. 4189.

Court of Customs and Patent Appeals.
Feb. 5, 1940.

Rehearing Denied April 1, 1940.

BLAND, Associate Judge, dissenting.

William A. Steiger, of Philadelphia, Pa. (Gordon W. Daisley, of Washington, D. C., and W. M. Van Sciver, of Philadelphia, Pa., of counsel), for appellant.

William T. Hedlund, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner of Interferences awarding priority to appellee Hallock of the invention embraced in the count at issue relating to an ice tray and grid therefor, used for making cubes of ice as is ordinarily done in domestic refrigeration.

The interference involves an issued patent of appellant Saler, No. 2,037,518, granted April 14, 1936 on an application filed April 19, 1935, and a pending application of appellee Hallock filed May 12, 1934.

The single count, which was claim 20 of the Saler patent, reads as follows: "1. A receptacle for producing ice particles comprising a pan and a grid structure flexible in part and dividing said pan into four corner cells and a series of intermediate cells disposed in rows and extending between said corner cells, said grid structure embodying a longitudinal, vertically disposed wall and a plurality of vertically disposed walls extending transversely from the longitudinal wall on opposite sides thereof, means embodied in the grid structure for rendering the same substantially rigid when force in an upward direction is applied at an end thereof, a handle attached to an end of the grid structure and engageable with the pan for raising the grid structure from the pan, said handle being thereafter effective to transmit flexing movement to the grid structure."

Hallock copied the Saler claim by amendment, and Saler's preliminary statement having alleged no date of conception as early as Hallock's filing date, an order was issued to show cause why judgment on the record should not issue in favor of Hallock. Saler moved to dissolve the interference on the ground that Hallock was not entitled to make the claim corresponding to the count because his disclosure did not support it. The motion was denied and the Examiner of Interferences then entered judgment on the record, which the board affirmed as aforesaid.

The involved invention relates to the arrangement of an ice tray and grid for the making of cubes of ice which comprises such means as will facilitate the removal of the grid from the tray and the separation of the cubes from the grid without the necessity of applying heat to the parts as is customarily done in holding the same under a water faucet.

Saler discloses a flexible *metallic* grid formed from a thin sheet of metal which is bent back and forth on itself so as to provide a longitudinal wall running through the tray and a plurality of transverse walls which results in a division of the tray space into a number of compartments in which the ice cubes may form. The flexible metal, which is bent backwards and forwards in order to form the said longitudinal and transverse walls, is spot welded or riveted at certain points so as to give rigidity only when a force is applied in an upward, vertical direction. The patent further discloses a grid with a handle at each end pivotally attached to the said longitudinal wall in such manner as to afford a leverage action to remove the grid and ice from the tray when the bond between the ice and tray is broken. After the grid and ice have been removed the flexible grid may be flexed by grasping the two handles in such manner as to dislodge the ice cubes from the chambers in which they form. It will be noticed at this point that the count calls for "a handle." We would further observe that the count merely calls for a "grid structure flexible in part" without specifying the component material.

The application of appellee discloses a handle attached to a centrally located rigid backbone or stiffening member which is not flexible. Upon the central stiffen-

ing member which, at the handle end, extends to the top of the tray, is constructed a series of what appear to be molded partitions of rubber consisting of longitudinal and transverse sections which divide the tray space into compartments for the formation of ice cubes. Hallock discloses but one handle. The rubber is very soft and flexible. By proper pressure on the handle, the grid and ice cubes are removed from the tray. The application states: "* * * Since the grid is made up essentially of rubber webs the ice cubes can be picked off from the grid without the use of heat such as by placing the grid with the ice cubes under a water faucet."

It is admitted here for the purpose of this appeal that the count reads upon the Hallock structure in all particulars except in the last phrase thereof which reads: "* * * said handle being thereafter effective to transmit flexing movement to the grid structure."

It is the contention of appellant that the Hallock disclosure does not support the last above quoted limitation in the count for the reason that, his handle being mounted upon a rigid part of the grid structure, which cannot be flexed, no operation of the handle could be effective to transmit flexing movement to the grid structure.

As a matter of physics it would clearly seem that the contention of appellant is correct, but both the Primary Examiner and the Board of Appeals came to a different conclusion.

The Primary Examiner who denied the motion to dissolve, in discussing this phase of the issue, said:

"* * * The grid structure with the ice cubes attached thereto is then removed from the tray for further manipulation to remove the ice cubes from the grid structure. Inasmuch as the operator in removing the grid from the tray does so by grasping the handle member 40, it seems only natural that he would continue to hold the grid by the handle with one hand while he manipulates the grid with the other hand to release the ice cubes therefrom. It *is* therefore follows that since the grid structure disclosed by Hallock is flexible in part, if the operator flexes the grid by holding the handle member in one hand and the opposite end of the grid in the other hand that the phrase, 'said handle being thereafter effective to transmit flexing movement to the grid structure,' reads clearly

on the Hallock disclosure, and the party Hallock has the right to make the count.

"The motion of the party Saler to dissolve is denied."

The Board of Appeals took the same view as the examiner on this question and stated:

"It is not contended by the party Hallock that the description in his application states that the handle is effective to transmit flexing movement to the grid structure. He, however, argues that this is inherent in his structure and that he is, therefore, entitled to make the count. Hallock shows only one handle and the count requires only one handle. After the grid having ice in it has been removed from the pan it is obvious that one end of the grid can be grasped with one hand and held rigid and the handle can be grasped with the other hand and turned about its axis or can be bent. When this is done, at least a portion of the grid will be flexed. Saler grasps both handles on his grid but the operation will be very much the same if one end of the grid is grasped instead of one of the handles. It seems to be clear that the grid must necessarily flex in the Hallock disclosure if operated in the manner indicated above. If it does, the structure will support the limitation—'said handle being thereafter effective to transmit flexing movement to the grid structure.'

"This limitation is not limited to transmitting any particular kind of flexing movement. The limitation is also not a positive act or step, but merely a passive adaptation, as it states that the handle *is effective* to transmit, etc. In itself, the handle is inherently effective to accomplish the function stated when properly manipulated."

■ We think that the conclusion reached by the Board of Appeals and the Primary Examiner is erroneous, and it seems to us that it is not in harmony with decisions made by these tribunals in earlier actions leading up to the declaration of the present interference.

It appears from the record that appellee copied certain claims not here involved from appellant's patent No. 2,037,517, one of which (claim 35) contained the following limitation: "and means for imparting to said flexible grid member sufficient stiffness to prevent substantial flexing only in the direction of the force applied for

removing it from the pan member." Claim 34 contained substantially the same limitation. The Primary Examiner rejected the claims upon the ground that, because of said limitation, they did not read upon appellee's disclosure. Appellee appealed to the Board of Appeals, which affirmed said rejection by the Primary Examiner upon the grounds stated by him.

In the statement of the Primary Examiner made upon said appeal we find the following:

"In applicant's device the reinforcing member is 'stiff', that is, it is not intended to bend in any direction. If this reinforcing member imparts sufficient stiffness to the grid when a force is applied in an upward vertical direction to remove the grid from the tray, it would also impart the same degree of stiffness to the grid when a force is applied in a downward vertical direction, in a horizontal direction from either side, or in any direction between the vertical and the horizontal. While in the Saler patent, the welds 10 are so located as to, and are intended to, stiffen the grid only when a force is applied in an upward verticle direction. If a force is applied to the Saler grid in a downward vertical direction, in a horizontal direction from either side, or in a direction between the vertical and horizontal, the flexibility of the grid is not effected by the welds 10.

"The limitation in claim 34 that the stiffing means will impart sufficient stiffness to the grid (said wall) to resist a force applied in one direction 'while affording flexibility in the remaining directions', and the limitation in claim 35 that the stiffening means prevent substantial flexing 'only in the direction of the force applied for removing it from the pan', are, the examiner contends, material limitations which cannot be read on applicant's disclosure, and therefore these two claims stand properly rejected."

No appeal was taken to this court by appellee from the rejection of these claims. It was therefore established that appellee disclosed a rigid member as a part of the grid incapable of being flexed in any direction.

Throughout the record it is apparent that the word "flex" was construed according to its usual meaning, viz., to bend.

We cannot agree with the Board of Appeals, wherein it stated: " * * * After the grid having ice in it has been removed from the pan it is obvious that one end of the grid can be grasped with one hand and held rigid and the handle can be grasped with the other hand and turned about its axis or can be bent. When this is done, at least a portion of the grid will be flexed. * * *"

This seems to us a physical impossibility. The board held, as hereinbefore noted, that Hallock's member upon which the handle is mounted cannot be flexed. If, then, one end of the grid filled with ice cakes is held *rigid* in the hand, or placed in a vice, it is clearly apparent that the handle could not be effective to transmit any movement whatever to the grid. It is true that the entire grid might revolve if one end was held loosely in the hand, but that would no more be transmitting a flexing movement to the grid than the turning of the handle of a grindstone would transmit a flexing movement to the stone. Such movement, however, was not contemplated by the board, for it presupposes that one end of the grid is held *rigid* in one hand while the handle is "turned about its axis or * * * bent" with the other. It seems clear to us that if the member upon which the handle is mounted is sufficiently rigid this is an impossibility, and as hereinbefore stated both of the tribunals of the Patent Office have held that said member disclosed by appellee is not intended to bend in any direction and is incapable of being so bent.

Inasmuch as we are satisfied that appellee's application does not disclose the element of the count here considered, it is unnecessary to consider other questions raised by appellant.

Appellant's motion to dissolve the interference should have been granted by the Primary Examiner, and it follows that the Board of Appeals erred in awarding priority of invention of the subject matter of the count to appellee. In these circumstances, under rule 125 of the Rules of the Patent Office, priority of invention should have been awarded to appellant.

For the reasons herein stated, the decision of the Board of Appeals is reversed.

Reversed.

BLAND, Associate Judge (dissenting).

For reasons stated by the board and the examiner I am in disagreement with the views of the majority as to the sole question presented, to wit: Will the very broad

limitation involved "said handle being thereafter effective to transmit flexing movement to the grid structure" read on appellee's disclosure?

The board in arriving at its conclusion made the following statement: "This limitation is not limited to transmitting any particular kind of flexing movement. The limitation is also not a positive act or step, but merely a passive adaptation, as it stated that the handle *is effective* to transmit, etc. In itself, the handle is inherently effective to accomplish the function stated when properly manipulated."

Even if it were conceded that the central rod does not bend to any great extent, unquestionably it bends some, and "flex" means to bend. Moreover, the stiffening rod imparts a bending or twisting movement to the soft rubber—not a great movement or a movement effective to remove the ice, but a movement nevertheless. The appellant has drawn his claim so broadly that it reads upon appellee's structure, and I think that the tribunals of the Patent Office were right in holding that the broad count at bar reads on appellee's structure.

I doubt very much if the majority is justified in referring to the action of the examiner and the Board of Appeals in rejecting claims 34 and 35 which were copied from a patent not involved here and which claims contain limitations quite different from the one at bar. This court and our predecessor in this jurisdiction have stated too often to require citation that the allowance of claims similar to those which come here on appeal is not to be taken as grounds for the allowance of the appealed claims. The same reasoning applies to the rejection of claims. The scope of the claims copied from appellant's other patent differs greatly from the scope of those at bar. The movement to which the limitations there related was the movement imparted by the stiffened grid structure when the grid was lifted from the pan and not the flexing movement imparted to the grid after it had been removed. Moreover, claim 35 called for *"substantial flexing"* (italics mine) in the upward movement of the grid whereas there is no such term as "substantial" in the count at bar. Said claim 34 called for "and means for imparting sufficient stiffness to said wall to resist substantial flexing in the direction of the force which is applied to remove the wall from the receptacle *while affording flexibility in the remaining directions."* (Italics mine).

It is too obvious to admit of extended discussion that the limitations under consideration there are not to be treated as identical with the one at bar.

It may be further pointed out that the board that passed upon the action of the Primary Examiner in holding that the appellee could not make claims 34 and 35 was a different board from the one whose decision we are here revising.

But, even if it be agreed that the holding of the tribunals as to claims 34 and 35 was inconsistent with the holding of the tribunals in the instant case, it is my view that their holding in the instant case was proper and that the decision of the board should be affirmed.